IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIE MCKENZIE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | NO. 1:20-cv-00118-SRW |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff Willie McKenzie commenced this action on February 20, 2020, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of benefits, social security disability ("SSD"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"). *See* Doc. 1. Plaintiff filed his applications on December 8, 2016 and December 7, 2016, respectively, alleging that he became disabled on October 1, 2014. (Tr. 15, 166, 180, 182, 196).[2] Plaintiff's applications were denied at the initial administrative level. (Tr. 15, 166-79, 182-95, 217). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), in which he appeared with an attorney. (Tr. 15, 36-55, 226). On January 30, 2019, the ALJ issued an unfavorable decision. (Tr. 15-29).

---

[1] Kilolo Kijakazi became acting Commissioner for the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to transcript pages are denoted by the abbreviation "Tr."

Plaintiff appealed that decision, and the Appeals Council denied Plaintiff's request for review on January 13, 2020. (Tr. 1-5). The ALJ's decision therefore became the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and remand this cause to the Commissioner for a new hearing and further consideration under sentence four of 42 U.S.C. § 405(g). *See* Doc. 1; Doc. 12, at 15. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 6, 7.  Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

## II.     STANDARD OF REVIEW AND REGULATORY FRAMEWORK[3]

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal

---

[3] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, because that was the version of the C.F.R. in effect at the time Plaintiff filed a claim for benefits. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q.3.

standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To evaluate the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor

---

[5] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

can independently limit the number of jobs realistically available to an individual. *Id*. 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 42 years old at the time he filed his applications for benefits and 44 years old at the time of the ALJ's decision. (Tr. 15, 29, 40, 166, 180, 182, 196, 361). Plaintiff is a resident of Headland, Alabama, and lives in a mobile home with his fiancée.[6] (Doc. 1; Tr. 49, 277). Plaintiff has an eighth-grade education. (Tr. 41).

Plaintiff claims that his ability to work is limited by bipolar disorder, a pinched nerve in lower back, rheumatoid arthritis, carpal tunnel syndrome, neuropathy in his right leg, hypertension, anxiety, panic attacks, mania, and moderate hearing loss. (Tr. 368). Plaintiff previously worked as a truck driver. (Tr. 27, 50, 397, 400-01).

Following the administrative hearing, at which Plaintiff and a vocational expert testified, and employing the five-step process, the ALJ made the following enumerated findings:

1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.

2.   The claimant has not engaged in substantial gainful activity since October 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.   The claimant has the following severe impairments: osteoarthritis, cervical spine degenerative disc disease, morbid obesity, sleep apnea, bipolar disorder, and panic disorder (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[6] At the ALJ's hearing, Plaintiff referred to his significant other, Jennifer Riley, as both his fiancée and wife. (Tr. 45, 48, 49, 54). In his brief, Plaintiff refers to Riley as his fiancée. (Doc. 12, at 8). The ALJ refers to Riley as Plaintiff's fiancée. (Tr. 27). Accordingly, the court also refers to Riley as Plaintiff's fiancée.

5.      The claimant has the residual functional capacity to perform sedentary work
        as defined in 20 CFR 404.1567(a) and 416.967(a) except occasionally
        stoop, kneel, crouch, and climb ramps and stairs, but never crawl. He should
        avoid all exposure to hazards. He can understand, remember, and apply
        short, simple instructions and attend for two-hour periods. He can tolerate
        occasional interaction with the public and co-workers.  Changes in the work
        setting should be introduced slowly and occur no more than occasionally.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565
        and 416.965).

7.      The claimant was born on September 24, 1974 and was 40 years old, which
        is defined as a younger individual age 18-44, on the alleged disability onset
        date.  The claimant subsequently changed age category to a younger
        individual age 45-49 (20 CFR 404.1563 and 416.963).

8.      The claimant has a marginal education and is able to communicate in
        English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability
        because using the Medical-Vocational Rules as a framework supports a
        finding that the claimant is "not disabled," whether or not the claimant has
        transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P,
        Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual
        functional capacity, there are jobs that exist in significant numbers in the
        national economy that the claimant can perform (20 CFR 404.1569,
        404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social
        Security Act, from October 1, 2014, through the date of this decision (20
        CFR 404.1520(g) and 416.920(g)).

(Tr. 17, 18, 21, 27, 28, 29).

## IV.   ISSUES ON APPEAL

On appeal, Plaintiff essentially argues that the ALJ failed to consider properly his bilateral

hearing loss at step two and beyond in the sequential evaluation process, and that the ALJ's RFC

determination was not based upon substantial evidence as the ALJ mischaracterized the medical

record. (Doc. 12, at 1). The Commissioner maintains that Plaintiff failed to establish that his hearing loss caused work-related limitations, that substantial evidence supports the ALJ's RFC determination, and that Plaintiff maintained the functional ability to perform sedentary work. (Doc. 13, at 5, 7).

## V.    DISCUSSION

### A.    <u>Failure to Consider Bilateral Hearing Loss</u>

Plaintiff argues that, although the ALJ acknowledged Plaintiff's "moderate hearing loss," the ALJ neither mentioned the hearing loss at step two or found it non-severe, nor did the ALJ account for it (or explain why it was not accounted for) in determining Plaintiff's RFC. (Doc. 12, at 8). The Commissioner contends that the ALJ was not required to identify every severe impairment at step two and that Plaintiff has not met his burden to show that his moderate hearing loss was a severe impairment or that it resulted in functional limitations to his ability to work. (Doc. 13, at 6).

An impairment or combination of impairments is "severe" if it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities"[7] and persists for at least twelve consecutive months. 20 C.F.R. §§ 404.1520(c) and 416.920(c); 404.1505(a) and 416.905(a). Plaintiff bears the burden to prove that an impairment is severe. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Step two is a threshold inquiry," *McDaniel*, 800 F.2d at 1031, which acts as a "filter" to eliminate claims involving no substantial impairment, *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). "If the ALJ finds a claimant does not have a 'severe' impairment or combination of impairments, she should conclude the claimant does not have a disability."

---

[7] Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR § 404.1521(b) (2016).

*Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 513 (11th Cir. 2017). In the Eleventh Circuit, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Id*. When an ALJ recognizes at least one severe impairment, the ALJ is not required to identify additional impairments at step two if the decision demonstrates that the ALJ properly considered all impairments at subsequent steps. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). At the fourth step of the sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two. *Id*.; 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). The ALJ's responsibility is met when she considers all medical evidence in the record by referencing the claimant's "combination of impairments" at step three and stating that she considered "all symptoms" in assessing the RFC. *Tuggerson-Brown*, 572 F. App'x at 951-52. Importantly, the "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

At step two in this case, the ALJ satisfied the requirements of the threshold inquiry by finding that Plaintiff has severe impairments, namely osteoarthritis, cervical spine degenerative disc disease, morbid obesity, sleep apnea, bipolar disorder, and panic disorder. (Tr. 18); *see Jamison*, 814 F.2d at 588. Because the ALJ found that Plaintiff has at least one severe impairment, the ALJ was not required to identify all of Plaintiff's severe impairments before moving to step three of the sequential evaluation process. *See Tuggerson-Brown*, 572 F. App'x at 951-52; *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. A'ppx 890, 892 (11th Cir. 2013) ("[S]ince the ALJ proceeded beyond step two, any error in failing to find that [the claimant] suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins

8

would be rendered harmless.").

Although the ALJ did not err at step two, the court must still review whether or not the ALJ considered all of Plaintiff's impairments, regardless of severity, in performing the next steps of the sequential evaluation process. Plaintiff argues that, while the ALJ acknowledged his "moderate hearing loss" and used boilerplate language stating that all evidence was considered, the ALJ's decision is devoid of any analysis of Plaintiff's hearing loss. (Doc. 12, at 8).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). "There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer*, 542 F. App'x at 891-92. "[I]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). "A statement by the ALJ that [the ALJ] considered the combination of impairments constitutes an adequate expression of such findings." *Kelly v. Berryhill*, No. 1:17-CV-35, 2018 WL 3430679, at *4 (M.D. Ala. July 16, 2018). *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (citing *Jones v. HHS*, 941 F.2d 1529, 1533 (11th Cir. 1991) for the proposition that "a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings"); *see id.* at 825 n.3 ("The record also does not support Heatly's argument that the ALJ's alleged error at step two prevented the ALJ from considering all of his impairments in combination in the rest of the sequential evaluation. At step four, the ALJ explicitly stated that it considered

'the entire record' and 'all symptoms.'"). Under Eleventh Circuit precedent, where "the ALJ stated that he evaluated whether [the claimant] had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining [the claimant's] RFC," "those statements are enough to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 951-52 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)); *Hamby v. Soc. Sec. Admin., Com'r*, 480 F. App'x 548, 550 (11th Cir. 2012).

Here, the ALJ found that "the undersigned has considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are non-severe (20 CFR 404.1545 and 416.945)," and concluded that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 18). Additionally, the ALJ's opinion stated that the ALJ considered "the entire record" as well as "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (Tr. 21). In assessing Plaintiff's RFC, the ALJ noted Plaintiff's alleged impairments, including "moderate hearing loss." (Tr. 22). The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 22).

Based on Eleventh Circuit precedent, the court concludes that the ALJ's statements demonstrate that the ALJ sufficiently considered all of Plaintiff's impairments in combination in the rest of the sequential evaluation. *See Tuggerson-Brown*, 572 F. App'x at 951-52; *Heatly*, 382 F. App'x at 825 n.3; *Vangile*, 695 F. App'x at 514 n.2 ("[A]lthough the ALJ did not explicitly

mention Vangile's chronic mastoiditis at step three, she did note Vangile 'had alleged disability because of chronic mastoiditis' at step four of her analysis."); *Chavis v. Colvin*, No. 1:14-CV-01147, 2016 WL 2764713, at *6 (M.D. Ala. Apr. 21, 2016), *report and recommendation adopted*, No. 1:14-CV-1147, 2016 WL 2637799 (M.D. Ala. May 9, 2016) ("While the ALJ could have discussed the medical evidence regarding Chavis' headaches in more detail, the ALJ's analysis was sufficient to discharge his duty that he consider all the impairments, severe and nonsevere, in combination.").

Plaintiff's reliance on *Williams v. Barnhart*, 186 F. Supp.2d 1192, 1197-98 (M.D. Ala. 2002), and *Cook v. Barnhart*, 347 F.Supp.2d 1125, 1132 (M.D. Ala. 2004), in support of his argument that—other than adding boilerplate language stating that all evidence was considered— the ALJ did not analyze Plaintiff's hearing loss (Doc. 12, at 8; Doc. 17, at 2), is misplaced. In *Williams*, 186 F.Supp.2d at 1197-98, unlike here, the ALJ did not even mention several of the impairments alleged. *See Chavis*, 2016 WL 2764713, at *6 and *L. v. Colvin*, No. 4:14-CV-2238, 2016 WL 627710, at *10-11 (N.D. Ala. Feb. 17, 2016). *Cook* is also distinguishable, as the ALJ found that the claimant had severe impairments in that case, but the ALJ's decision did not specify what those impairments were. *See* 347 F. Supp. 2d at 1129. As stated previously, in the case before this court, the ALJ properly used the language that the Eleventh Circuit has previously found sufficient, which satisfies the ALJ's obligation of considering Plaintiff's impairments in combination beyond the second step of the evaluation process.

Plaintiff, however, argues that the ALJ failed to consider his moderate hearing loss at step four of the sequential evaluation, despite that fact that Dr. Sam Banner, whose opinion the ALJ accorded great weight, diagnosed Plaintiff with "bilateral hearing loss" and the fact that Plaintiff was prescribed hearing aids. (Doc. 12, at 8; Doc. 17, at 4). Plaintiff contends that, although his hearing loss causes functional limitations, including the need for hearing aids, that affect his ability

to work, the ALJ neither allowed for the use of any assistive device such as hearing aids in formulating Plaintiff's RFC nor addressed the noise level of the work environment. (Doc. 17, at 4).

"[T]he mere diagnosis of [a condition] says nothing about the severity of the condition." *Crans v. Berryhill*, No. 3:16-CV-914-GMB, 2017 WL 4683933, at *5 (M.D. Ala. Oct. 18, 2017) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *accord Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011) (stating "proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work.").

Here, Plaintiff has failed to show that his hearing loss constituted a severe impairment that affected his ability to work. Dr. Banner diagnosed Plaintiff with "bilateral hearing loss" and noted that he wore hearing aids. (Tr. 872, 875). However, Dr. Banner also found that Plaintiff was able to pass the whisper test at five feet bilaterally with his hearing aids in place. (Tr. 872). Plaintiff does not cite to any medical records that show that he has any functional limitations with or without hearing aids. Moreover, at the administrative hearing, Plaintiff did not mention wearing hearing aids, any problems associated with his hearing loss, or how such hearing loss prevented him from working or affected his ability to work. Nor did Plaintiff's attorney ask him about his hearing loss during counsel's examination of Plaintiff or mention anything about hearing loss to the VE. *See Foy v. Berryhill*, No. CV CBD-17-2743, 2018 WL 3707837, at *4 (D. Md. Aug. 3, 2018) (finding

Case 1:20-cv-00118-SRW   Document 18   Filed 09/14/21   Page 13 of 20

that the ALJ's failure to discuss plaintiff's hearing loss and tinnitus did not constitute reversible error where plaintiff was unable to point to any subsequent evidence that his hearing loss or tinnitus bothered him even slightly, and at the administrative hearing, plaintiff failed to mention suffering from either hearing loss or tinnitus and his attorney likewise never asked plaintiff about his hearing loss or tinnitus during counsel's examination of plaintiff); *Lenowsky v. Kijakazi*, No. 8:20-CV-1004, 2021 WL 3879047, at *7 (M.D. Fla. Aug. 31, 2021) ("Regardless of this issue, the Plaintiff's conjecture that his hearing loss prevents him from engaging in medium work—without more—is not a basis for reversal in any event.").

Further, any failure by the ALJ to address the use of any assistive device such as hearing aids in formulating Plaintiff's RFC or discuss the noise level of the work environment is harmless error, because the inclusion of these limitations would not have changed the result. Based upon the VE's testimony, the ALJ found that Plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. (Tr. 28). The jobs of assembler, DICOT 713.687-018, 1991 WL 679271; weight checker, DICOT 737.687-026, 1991 WL 680047; and document preparer, DICOT 249.587-018, 1991 WL 672349 all indicate that the requirement of "hearing" is "Not Present - Activity or condition does not exist." Thus, because the limitations that Plaintiff raises would not affect his ability to perform one of the jobs determined to be appropriate for Plaintiff that exists in significant numbers in the national economy, the ALJ's failure to include limitations involving hearing aids is harmless. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (finding harmless error where an alleged limitation that was not included in the ALJ's hypothetical (or in the RFC) was not necessary to perform one or more of the jobs identified by the VE, according to the DOT).

Accordingly, for these reasons, the court concludes that Plaintiff has not met his burden to show that his moderate hearing loss was a severe impairment or that it resulted in functional

13

limitations to his ability to work.

### B. Mischaracterization of Medical Record and RFC Determination

Plaintiff argues that the ALJ mischaracterized Dr. Banner's objective findings regarding Plaintiff's range of motion and strength in his extremities, and that—based upon this mischaracterization—the ALJ failed to include any limitations with respect to handling, fingering, or feeling in Plaintiff's RFC. (Doc. 12, at 9-10, 13-14).

On February 15, 2017, Dr. Banner conducted a consultative examination of Plaintiff on behalf of the agency. (Tr. 871-75). The examination showed that Plaintiff was able to flex and extend his neck 30 degrees, laterally flex his neck 40 degrees, and rotate his neck bilaterally 90 degrees; no spasms were observed. (Tr. 872). Dr. Banner found that Plaintiff had sensation changes with positive Phalen's signs in all of his fingers. (Tr. 873). Dr. Banner also noted that Plaintiff had crepitance in his left knee with range of motion. (Tr. 873). Examination revealed that Plaintiff had "Hip extension 0 degrees bilaterally," "Hip flexion 60 degrees bilaterally," and "Knee flexion 90 degrees bilaterally." (Tr. 873-74). Plaintiff had no back spasms, and he was able to bend forward 45 degrees, bend backward 10 degrees, laterally flex 15 degrees, and rotate his back 20 degrees bilaterally. (Tr. 874).

Dr. Banner found that Plaintiff had no pain or difficulty getting on or off the examination table; he was able to "walk normal step, height and length without deviation from straight line"; Plaintiff's station was normal, although he was unable to squat during the examination; and he was able to tandem walk and heel-to-toe walk. (Tr. 874). Dr. Banner's findings as to "Motor Report Weakness" was "4+/5 left extremities after five repetitions" and "4/5 lower extremities after five repetitions." (Tr. 874). Dr. Banner also found that Plaintiff's sensation to pinprick, which was tested in the face and in his upper and lower extremities, was intact. (Tr. 874). Plaintiff's examination also reflected that Plaintiff's grip strength was 4/5 bilaterally, there was no atrophy

of any muscle group in the upper or lower extremities, his muscle tone was normal, his fine and gross motions in both hands were satisfactory, and Plaintiff was able to button and unbutton clothing without difficulty. (Tr. 875).

Summarizing the findings of Dr. Banner, to whose opinion the ALJ gave great weight, the ALJ stated as follows:

> Findings from a physical consultative examination performed by Sam R. Banner, M.D., in February 2017 show that the claimant had decreased range of motion of the lumbar spine, left knee crepitance, and sensation changes of all fingers with Phalen's testing, but otherwise, had full range of motion of all other joints, full strength of all extremities, intact sensation to pinprick in the face and all extremities, normal gait, no evidence of ataxia, intact fine and gross manipulation, and satisfactory tandem heel to toe walk.

(Tr. 23, 26).

However, the ALJ's summary that Plaintiff "had full range of motion of all other joints" and "full strength of all extremities" is inaccurate, as Dr. Banner's examination showed that Plaintiff had decreased range of motion in some joints and less than full strength in his extremities. Dr. Banner found that Plaintiff had "Hip extension 0 degrees bilaterally," "Hip flexion 60 degrees bilaterally," and "Knee flexion 90 degrees bilaterally," while the normal range of motion as to these is 30, 100, and 150, respectively. *See* Doc. 12, at 10 n.1; Doc.12-1. Similarly, instead of Plaintiff's having "full strength of all extremities," Dr. Banner's examination showed that Plaintiff had "4+/5 left extremities after five repetitions" and "4/5 lower extremities after five repetitions." (Tr. 874).

Although the ALJ inaccurately summarized Dr. Banner's medical findings, any misstatements were at most harmless error, as the ALJ's opinion as whole reflects that the ALJ considered entire record in determining Plaintiff's RFC. "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016). "To find that an ALJ's RFC determination is supported

by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). "[T]o find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Id*. at 1055-56.

Here, Dr. Banner's findings were not the only evidence on which the ALJ relied in determining Plaintiff's RFC. (Tr. 21-27). The ALJ cited to records from Dothan Family Health Center through December 2016 in which physical examination findings indicated that Plaintiff had "mild paraspinal, lower back, and hand tenderness, but otherwise, had normal findings, including normal lungs and cardiovascular findings, no sensory abnormalities, no motor dysfunction, normal gait and stance, and normal coordination and reflexes." (Tr. 23, 441-42, 445, 448, 452). The ALJ also cited to emergency department examination records from April and December 2016 showing that Plaintiff had "left mid to low back muscular tenderness, but had normal range of motion and strength, and no neurological deficits." (Tr. 23, 698, 863, 942). Emergency department records from August 12, 2017 reflected that, on examination, Plaintiff had "painful range of motion of the neck, but had strong and equal grip strength, no crepitus, normal strength, no tenderness, intact sensation, and intact cranial nerves." (Tr. 23-24, 917). Also, "X-rays of the cervical spine showed mild degenerative changes." (Tr. 24, 917). The ALJ also considered medical records from January through February 2018 from Myers Chiropractic Clinic with neck, back, and upper and lower extremity pain and examination findings that showed that Plaintiff had tenderness, spasms, and decreased range of motion of the cervical, thoracic, and lumbar spine, and pain with straight leg raise testing. (Tr. 24, 976-77). However, the records reflected that Plaintiff "had negative craniocervical functional maneuver, normal reflexes, negative Tinel test bilaterally for carpal tunnel syndrome, and normal compression test." (Tr. 24, 976-77).

The ALJ further considered the February 22, 2017 opinion of State agency medical consultant, E. Russell March Jr., M.D. (Tr. 26, 166-175). Dr. March reviewed the medical evidence, including the medical examination by Dr. Banner, and found that Plaintiff could "perform work at a light exertional level as defined by the regulations except frequently balance; occasionally stoop, kneel, crouch, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds, or crawl; and avoid all exposure to unprotected heights." (Tr. 26, 170, 173-75). The ALJ afforded partial weight to Dr. March's opinion, given recent chiropractic treatment records from January 30, 2018 that showed that Plaintiff "had decreased range of motion and tenderness of the cervical, thoracic, and lumbar spine, but had negative craniocervical functional maneuver, normal reflexes, negative Tinel test bilaterally for carpal tunnel syndrome, and normal compression test." (Tr. 26, 976-77). Additionally, the ALJ considered recent imaging studies of the cervical spine that "showed normal disc heights, osteophyte, degenerative joint disease anterior C4, C5, and C6 levels, and abnormal alignment at Cl-C2," as well as X-rays of the lumbar spine that "showed symmetrical and equal facet joints, no evidence of osteoarthritis or degenerative joint disease, moderate disc narrowing at L5-S1, and mild to spinous rotation." (Tr. 26-27, 979).

In viewing the evidence in the light most favorable to Plaintiff and considering Plaintiff's subjective complaints, the ALJ concluded that Plaintiff could perform work at a sedentary exertional level. (Tr. 27). The ALJ noted that Plaintiff worked in 2015 and 2016 as a pizza delivery driver and that he did not indicate during the administrative hearing that he was not able to continue doing so due to impairment related symptoms. (Tr. 25, 40, 305, 352). The ALJ concluded that "[w]hile the earnings did not rise to substantial gainful activity level, it suggest[ed] that he would be able to work within the residual functional capacity." (Tr. 25). The Commissioner may consider a claimant's work activity in evaluating a plaintiff's claims and

in fashioning the plaintiff's RFC. *See* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013); *see Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) ("Further, the ALJ did not err by considering [the plaintiff's] ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.").

Based on the record, the court concludes that he ALJ did not rely solely on Dr. Banner's examination findings in determining Plaintiff's RFC. The ALJ considered the record as a whole, including evidence such as Dr. March's opinion and the chiropractic treatment records, which postdated Dr. Banner's examination findings. Dr. March, a State agency consultant, reviewed Dr. Banner's examination findings. State agency medical or psychological consultants are considered experts in Social Security disability evaluation. *Hanisee v. Comm'r of Soc. Sec.*, 797 F. App'x 449, 450 (11th Cir. 2019); 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Although Dr. March found that Plaintiff could perform work at a light exertional level, the ALJ's RFC determination was even more restrictive after the ALJ also considered the more recent chiropractor records that showed a decreased range of motion. Plaintiff does not cite to any medical source who offered the opinion that Plaintiff was more limited than the RFC finding of the ALJ or that he was disabled by his impairments.

Plaintiff also argues that the ALJ erred in concluding that his rheumatoid arthritis was non-severe as the ALJ found that "Dothan Family Health Center records indicate that the claimant has diagnoses of rheumatoid arthritis and bilateral carpal tunnel syndrome, based on the claimant's complaints of right hand pain. . . . There is no evidence of additional treatment or laboratory findings for rheumatoid arthritis or carpal tunnel syndrome." (Doc. 12, at 10-11; Tr. 18). Plaintiff contends that the ALJ mischaracterized the record because Dothan Family

Health records do not indicate that the diagnosis was based solely on his complaints, and that there is evidence of laboratory findings in support of the diagnosis, although the lab results are not included in the record due to a "catastrophic loss of medical records" from November 2011 through August 26, 2016 by Dothan Family Health Center. (Doc. 12, at 11; Tr. 684). In support of his argument, Plaintiff also cites medical records from Dr. Joseph Sewell who stated that Plaintiff's condition included "Rheumatoid arthritis of hand," (Tr. 446, 45), and Dr. Banner's diagnosing Plaintiff with rheumatoid arthritis (Tr. 875). (Doc. 12, at 11-12).

As discussed previously, because the ALJ found at least one severe impairment and moved beyond step two of the sequential evaluation, the mere fact that the ALJ did not find Plaintiff's rheumatoid arthritis severe was not error. *Vangile*, 695 F. App'x at 513; *Tuggerson-Brown*, 572 F. App'x at 951. Nor does Plaintiff's diagnosis of rheumatoid arthritis establish that the impairment was severe or caused limitations in his ability to work. *Moore*, 405 F.3d at 1213 n.6; *Wind*, 133 F. App'x at 690. The ALJ specifically considered all of Plaintiff's medically determinable impairments, including his rheumatoid arthritis, as well as the entire record in assessing his RFC. (Tr. 18, 21, 22). Plaintiff contends that the sensation changes, numbness, motor weakness with repetition, and decreased grip strength documented during Dr. Banner's examination support a finding that Plaintiff was limited in his ability to feel. (Doc. 12 at 14; Tr. 873-75). However, the ALJ found that Dr. Banner's examination showed that, although Plaintiff "had numbness of all fingers" and "had sensation changes in all fingers with Phalen's," Plaintiff "had satisfactory fine and gross manipulation and was able to button and unbutton clothing without difficulty." (Tr. 18, 875). Further, Dr. March, who gave the only functional opinion as to Plaintiff's physical limitations and who also considered Dr. Banner's examination findings, determined that Plaintiff had no manipulative limitations. (Tr. 26, 170, 173-75, 186, 190). Additionally, the ALJ noted that emergency department records from August 12, 2017 reflected that on examination

Plaintiff had "strong and equal grip." (Tr. 23, 917).

Accordingly, based upon the foregoing, the court concludes that the ALJ properly considered the entire record in determining Plaintiff's RFC and that the ALJ's decision is supported by substantial evidence. *Crawford*, 363 F.3d at 1158 ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence"); *Edwards*, 937 F.2d at 584 n.3 ("Under th[e] [substantial evidence] standard, [a reviewing court] do[es] not reverse the Secretary even if th[e] court, sitting as a finder of fact, would have reached a contrary result."); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (citation omitted).

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and it concludes that, for the reasons given above, the Commissioner's decision is due to be AFFIRMED.   A separate judgment will issue.

DONE, on this the 14th day of September, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge